Let's wait just a minute and let everyone get settled first. All right, I'll let you pronounce your name for us. Seysha Kalapadipu, Your Honor. Thank you. All right. May it please the Court. Your Honors, the primary issue in this case is whether or not a district court can disregard established principles of law governing Rule 12 motions to dismiss in order to achieve an outcome that the parties do not anticipate or expect. And those established principles include, number one, the prohibition on filing piecemeal or successive Rule 12 motions. Number two, the general prohibition on considering matters outside of the record. And if the court is going to be considering matters outside of the record, then to convert that motion into a Rule 56 motion for summary judgment that gives the non-movement an opportunity to respond in kind. And number three, the general requirement that any and all fact disputes at the Rule 12 stage are to be resolved in favor of the non-movement and that well-pleaded allegations are presumed to be true and not presumed to be opposite. Those are three principles that litigants and courts have come to court, come to federal court expecting these kinds of Rule 12 motions to adhere to. As to the successive Rule 12 motion, the second one dealt with the admitted complaint. Isn't that right? It did, Your Honor. But the allegations as to breach, the allegations that were addressed in the admitted complaint were identical to the allegations of the original complaint. And so the issue is whether or not a district court can reconsider on a successive motion to dismiss allegations that are identical to the issues in the first motion to dismiss. And I think the Fifth Circuit has said in the, I believe it's the Somex case that I cited, when you have successive, when you don't have anything new in the admitted complaint that raises an issue, those issues should have been addressed in the original complaint. So our original complaint had allegations of breach related to the emails in question or the documents that were referred to. Those allegations didn't change in the amended complaint. So any arguments about those allegations should have been raised in the original motion to dismiss. Am I right in the original order she only cited one case, and that was to distinguish retail wholesalers, the Ninth Circuit decision, right? Yes, Your Honor. She had no authority standing for a contract or a breach. It looked to me like she gets to the second one, and there's much more legal discussion. In the first motion, what the court said was that the court addressed the breach and damages issues and said to the extent that HP is arguing that they did perform their duty, that is a question that is more properly reserved for summary judgment. And that is at, I believe, page 8 or 9. She's assuming a duty, but then she, am I correct, she then reconsiders and says, well, wait, I'm not sure how this document that you're suing under would have created any duty. Isn't that the eventual outcome? I mean, let me read for you what she said at that April 23 hearing. She says, whether a code of conduct that sets out standards is enforceable by a third party as opposed to a basis for HP to take action to terminate its business relationship. I think that's the question you answered right. Yes, Your Honor. So the timing of it is that she had that hearing on April 23rd and then issues a ruling in August. Yes. And in the August ruling, she finds that there is a duty. But she cites no law for that. She cites no law, but what she says is that HP, that we are a partner of HP and that the partner code of conduct and the anti-corruption policies create duties.  And what's your best authority for that? What case are you citing that that code of conduct created a duty? Your Honor, we cited several cases in our motion. The only ones I saw were the SDNY securities fraud cases. Right. In Ray Banco, something or other, and then Petrobas. Correct? Yes, Your Honor. Do you have a Texas case that creates a duty based on an internal policy document? Do you have one now that you can give me? Because those security fraud cases are different to my eye. So do you have a Texas case that stands for the proposition that Judge Rosenthal said was the question presented? Your Honor, I do have one. I don't have it right in front of me, Your Honor. It's in your brief. It's in my— And I'm thinking specifically of the Thigpen case that Hewlett-Packard cites. I didn't see it addressed in your reply brief. Do you remember? Is that a case you recall, and can you distinguish it? The Thigpen case, as I recall, is a California Ninth Circuit case involving Hewlett-Packard. And it's a different issue. It's not an issue of Texas state law, and it's not an issue of a Texas duty to—it's a Texas negligence case. What about Cleveland v. Celtic Properties, which expressly held that a company's internal policies or procedures will not create a negligence duty where none otherwise exists? Are you familiar with that case? I'm sorry? Are you familiar with that case? I am, Your Honor. And that case is distinguishable because these are not internal policies or procedures. These are published policies that are stated with the express intention to have partners at HP rely on them. And, you know, in places—in other parts of the world where corruption is an issue, where business practices are a concern, you know, the fact that you have an American company that is standing up for these sorts of policies and saying we are—we take anti-corruption seriously, we take bribery— That is a policy argument. Yes, Your Honor. It turns on your response to Judge Douglas that this isn't an internal policy document. Correct, Your Honor. It's not an internal policy document because they are actively promoted on the website. They are shown to different people. They are—the Partner Code of Conduct expressly applies to all partners, and it's not an internal document of HP. It is literally on their webpage. But, you know, my concern about this argument is that there's no cross notice of appeal on the duty issue. At this point, we have the—HP did not file a cross notice as to whether or not there was even the existence of a duty. So this court should assume a duty for purposes of this stage of litigation because it's not an issue that's been brought up for appeal. Well, they did bring up—I mean they brought up the ThinkPen case, and it's not a California case. ThinkPen v. Locke is a Texas case. I apologize, Your Honor. I'll have to— So why don't you address it? I don't have that case to memory, Your Honor. I apologize. Well, if you thought it was a—why did you think it was a California case? I was thinking about the argument that they were making about the misrepresentations. As far as the duty is concerned, Your Honor, I'll look and I'll respond to that on reply. The issue of the duty, though, is one that the court—that the appellee did not file a cross notice of appeal on. So, therefore, I was focused on the breach issue and the issues in the second motion to dismiss. As far as the subsequent—Your Honor, as far as the breach issue that the—sorry, I lost my train of thought. As far as the breach issue that Hewlett-Packard has alleged, Your Honor, there is—the district court had to rely on a single email that is not the sum total of the communications between the parties on this issue. And to the extent that the district court assumed what that email meant and what the parties actually intended in that conversation, we respectfully contend that the district court erred and did not apply the appropriate legal standards. Specifically, the district court did not consider alternative interpretations of that email or the existence of other emails or communications. This was not a document that was central to the plaintiff's or the non-movement's motion or petition, complaint. The issue—the district court seemed to distill Paidita's complaint into a payment dispute. And, Your Honor, this is not a payment dispute. What this is is this is a dispute regarding the business practices of Hewlett-Packard and its relationship with its partners. Hewlett-Packard has made a number of statements about what it—how it treats complaints, ethics complaints. And Hewlett-Packard, in its own briefing, has said that actually those statements are aspirational, that they don't have a specific intent to comply with those statements. Some of those statements include the idea that they're going to rigorously investigate complaints as they come through. Well, this complaint was filed within a month or two. It was denied. But we don't have any— That just means they disagreed with you. That doesn't mean that they didn't—they didn't review it or analyze it, correct? But we don't have any knowledge of that because they don't have any stated policies or procedures as to what they're going to do when they receive complaints. And that's one of the issues that we would like to explore in discovery is whether or not they even have any policies or procedures. And if they do have policies and procedures, do they follow those policies and procedures? And if they follow them, at that point, then you can say, okay, well, this is just a disagreement as to the conclusion. But when they delegate the responsibility to investigate to the very partner that is under investigation, and then they say, well, that satisfies our obligation, we respectfully disagree with that, without telling us—and there are e-mails that show—we ask them, what did you do? How did you investigate this? What were your policies and procedures? And they say, well, that's all confidential. We don't have to disclose them. Respectfully, Your Honor, I disagree with that position because I think that if they're going to say we have a robust investigation mechanism that we will take these allegations seriously, then they should tell us what is the policy and procedure that they have in order to meet those obligations. And if they don't have any, that speaks to whether or not they were ever serious about those complaints in the first place. To the extent that the district court actually relied on—to the extent that the district court relied on the e-mail, Your Honor, we respectfully request that the court return this case to the district court so that even if that was appropriate, we have additional evidence—we have an opportunity to present additional summary judgment evidence in response. We believe that there are other documents, other materials that could have aided in our interpretation of the e-mail. We disagree that as a matter of law, there can only be one interpretation of the documents that were attached to Hewlett-Packard's motion to dismiss. They weren't even attached to our original petition. Hewlett-Packard claims that because they are referenced in our petition, they can be cited and used in a motion to dismiss. But respectfully, Your Honor, I think there needs to be some clarity here with the district courts as to what the court can consider on a motion to dismiss as opposed to documents that are attached to the plaintiff's complaint. If a district court is going to consider documents attached to the plaintiff's motion to dismiss, those documents have to at least be central to the claim. And our position is that the rejection, the refusal to consider the merits of our claims, that e-mail saying that they had investigated is not central to our claim. So it's not a document— You're central to the claim language. What authority does that come from? That comes from a Fifth Circuit case, Your Honor. Actually, it comes from Inmate Katrina Canal Breaches, 495 F. 3rd, 191. Dismissal is affirming a dismissal where the documents were central to the plaintiff's claims. I've been looking because I was thrown off when you say they've waived the issue, they had to cross-appeal because the district court never did say there wasn't a duty. Yes, Your Honor. Okay, well, I'm reading the district court opinion because I had not thought that. The district court explicitly said law of the case does not apply and no formal fiduciary duty is present here citing Fig Penn v. Locke. So the district court's second order explicitly did say it was finding no duty. Why would they cross-appeal that? Why is an answer that it was waived work at all? As to the fiduciary duty, the district court came back and reversed itself, yes, but as far as the negligence claim, the district court never reversed the finding of a negligence duty. So that's why that finding needed a cross. At least one of the three claims, the negligence claim, the duty as to the negligence claim is a live issue. So that's the claim that there were false statements made in the Code of Conduct and you're relying on those as negligent misrepresentations. Well, there are two claims. There's a negligence claim and a negligent misrepresentation claim. As to the negligence claim, the partner Code of Conduct creates duties. No, I understand that, but we're talking about the negligent misrepresentations, correct? Yes. Okay, and there you accepted it looked like the Clardy Manufacturing Company decision that the statements to be actionable had to be existing fact statements. Yes, Your Honor. And so if the Code of Conduct was authored before you developed any contractual relationship with contract computers, how could any statement in there have been false as to that? See what I mean? Well, the statements that are false are the statements that they have a robust practice of investigating complaints. They will investigate. Well, that they created policies and procedures to investigate. As far as we know, there are no policies or procedures even to investigate. As far as you know, there are no policies and procedures to investigate. Right, even though the partner Code of Conduct says we have robust policies and procedures to investigate complaints. But the false statement was they actually have no policy to investigate, and then that's therefore necessarily in tandem with you can't look at the e-mails because if you look at the e-mails, it's clear they did investigate and they basically didn't find wrongdoing. That's correct, Your Honor. That's why the two arguments have to go together, according to you? Yes, and it's not a false statement. Well, falsity in the sense of a fraud. May I finish, Chief? Yes, Your Honor. Falsity not in the sense of a fraud, but in the sense of they make these representations about we will investigate any claims, but that presumes that you have a policy or procedure in place to investigate, that you're going to actually, okay, when a complaint comes in, this is the way it's going to get directed. These are the people that are going to handle it. This is how it's going to be resolved. And there is no indication that there ever was any sort of policy or procedure associated with actual complaints. And so that's why it is a present reckless statement to say we're going to investigate without saying how or when or what the context of that investigation, what that investigation is even going to look like. And that's some evidence that, and the fact that they claim that it's aspirational is some evidence that they never had any intentions to take that claim seriously. It was just to reassure the public. All right. You saved time for rebuttal. Thank you. Thank you. Ms. McNally. Good morning, Your Honors. May it please the Court. I'm Laura McNally on behalf of Appellee Hewlett Packard Enterprise Company, or HPE. This case has very much turned into a plaintiff in search of a viable theory of liability against HPE. Plaintiff Piedata claims that it was injured to the tune of $50 million. Piedata's theory on why HPE is responsible for these losses keeps changing. In Piedata's first complaint, it pled that HPE was responsible for the damages that it had suffered due to a third-party K-computers conduct. After HPE moved to dismiss, the district court found that, at most, Piedata had pled that HPE failed to investigate Piedata's complaint after it said that it would do so. In its second bite at the apple, Piedata's amended complaint focused on HPE's alleged failure to investigate. After HPE moved to dismiss again, the district court found that dismissal was appropriate because plaintiff's allegations were essentially that HPE did investigate and determined that no additional steps on its part were necessary. In its third bite at the apple, Piedata filed a motion for reconsideration. In that, it essentially argued that HPE's investigation was inadequate. The court rejected that theory as well. The district court gave Piedata a narrow pass the first time around but came to the correct result the second time around. This court should affirm. Now, as a threshold issue, Piedata argues that HPE's motion to dismiss arguments were waived under Rule 12g because they could have been raised in that first motion. The parties disagree on whether Rule 12h-2 accepts from Rule 12g arguments based on the failure to state a claim. Now, the parties rely heavily on the Fifth Circuit's decisions in Doe and Bellow for their positions. HPE, we say that these decisions are spot on. Plaintiff emphasizes procedural distinctions in Doe and Bellow and the one at Barr. But procedural distinctions for purposes of this exception don't matter. As Doe explained when clarifying its holding from Bellow, in Doe the court said, quote, we simply said that Rule 12h-2 allows the filing of a second motion. We apply that same rule to this case. Here, a straightforward application of Rule 12h-2 proves that HPE was well within its rights to bring that second 12b-6 motion to dismiss following the filing of an amended complaint. Now, moving to the substance. Well, once more before you get off the substance. So the first order yes of fiduciary duty, correct, citing really no law.  Second order reconsiders? Yes. And on that issue? Yes. Citing? Bigpen.  Crim truck, I think, and some other case law as well. It was interesting, though, because at the oral argument there, the district court, I believe she begins by saying something like, well, let's start with breach of fiduciary duty. I think you're wrong there. So the decision was? For us to affirm, do we have to look at the emails to say, oh, amended complaint, changed circumstance, we know they did fulfill a fiduciary duty, or is there a threshold question now legally that there was no fiduciary duty established? I don't think that you need the email on the fiduciary duty question whatsoever. The email is more pertinent to the negligence claim. So we've got negligence, breach of fiduciary duty, and negligent misrep. Okay. And those emails were or weren't referred to in the original complaint? They were referred to. All or some? That email chain was referred to in the original complaint. Both the first email in the chain where PIDATA sends the complaint, and then HPE's response was referred to as well. And I'll just jump right to that email because I do think it's really important here. So with respect to the negligence claim and the importance of Exhibit A, PIDATA tries very hard to keep that document from the court. It is HPE's position that the amended complaint alleges that HPE failed to investigate PIDATA's complaint about K computers. On appeal, PIDATA claims that its position is much broader. HPE failed to adequately investigate. HPE improperly delegated its investigation. We heard today something about HPE not following its own policies. I don't know where that one came from. I'll explain why that argument is both waived and wrong. Key to that, again, is this Exhibit A, is this email. Exhibit A, we attached it to our second motion to dismiss. The first motion to dismiss was very much focused on the question of duty, just a general, broad question of duty, because in that amended complaint, while my friend on the other side said that, oh, these complaints are exactly the same, they were not. Many of the factual allegations were the same. But in the first complaint, there was just one cause of action that was styled as negligence and or breach of fiduciary duty and or negligent misrep where everything was basically in one paragraph. On the second motion and the second complaint, he really separated out all the different causes of action into three separate counts. So we were able to better understand the theory of liability, which had also been informed, I think, by the district court's decision. So in that sense, it was very different. It became clear that it was based on HPE's alleged failure to investigate. So then we focused more on the particular email that is the subject of paragraphs 11, 12, and 18 in the complaint. In those paragraphs, plaintiff writes, plaintiff brought the issues with K computers to the attention of HPE ethics and compliance office by an email dated April 29, 2022. Next paragraph. HPE simply failed and refused to act on the allegations and instead advised on June 30th that they had taken all necessary steps to address the concerns that plaintiff raised. Paragraph 18, in the cause of action for negligence, it says, HPE is alleged to have breached its duties to PIDATA when it wholly and completely failed to investigate. As stated earlier, referring to 11 and 12, HPE failed and refused to act on the allegations. Additionally, and because it acknowledged the violations by K computers, HPE further breached its duties when it purported to have taken corrective action but in fact took no action at all. Frankly, this description of Exhibit A is misleading. It makes it seem like no one responded for two months and then HPE offered PIDATA some type of canned response. That's not what happened. The email chain very clearly shows that PIDATA and HPE went back and forth for two months with HPE providing a response explaining that they disagreed with PIDATA. How much of the attachment is the district court allowed to rely on? If the complaint only referred to the April 29th conversation and the June 30th issue, to the extent there is additional information in that email chain because you keep referring to an email chain, how much of it is the district court allowed to rely on? Because this is both the first part and the last part of the email chain, the whole document I think is properly before the court. And here we're not asking the court to make some inference from what's in the chain. We're saying that the language that plaintiff cites, and I think in paragraph 18 they're bringing in some other pieces of the chain as well, that the language that plaintiff says is conveyed by this email is just not in there. So that the email chain shows that HPE and PIDATA went back and forth, didn't just wait two months to give a response, that PIDATA refused to accept HPE's response and that the last email is HPE saying, we're done with this, we're not going to respond to you any further. Nowhere in Exhibit A is the language about HPE refusing to investigate. Nowhere does HPE acknowledge violations by K computers. Nowhere in Exhibit A does HPE say that it took corrective action. And we see this idea of, oh, HPE says it took corrective action all over the place. HPE never said that. These are just flat-out falsehoods that are not supported by the document. So in this sense, we're not asking for some inference or competing factual inferences from this document. We're saying purely that it does not support plaintiff's allegations. It directly refutes them. And from that sense, where you have a document that is properly incorporated by reference, we should be looking at what the document says and the document controls where they directly controvert each other. And with the absence of those allegations, plaintiff is left with absolutely nothing other than their say-so. Why would we use the economic loss rule if your underlying argument is there's no contractual privity? So the economic loss rule, while there may not be contractual privity between HPE and PIDATA, at least they have not alleged that. They have alleged that there's not contractual privity there. The economic loss doctrine, I think, very clearly applies here. Does clearly apply? I think it does. It offers kind of an easy way out on all three tort claims. And I would direct the Court's attention, and I'm raising this now, it's not in our brief, because this point was fleshed out a little bit more in reply, to the Court's decision in LAN-STV v. Martin K.E.B. Construction Company. It's a Texas Supreme Court decision at 435 SW 3D 234, and particularly at page 243 of that opinion. In that case, the Texas Supreme Court... I didn't ask him any questions about the economic loss rule. So are you bringing up a case that you didn't cite to support your argument on the economic loss rule? We raised the economic loss rule in opposition. He then reframed it in reply, so I'm just offering the Court another case that addresses... Maybe it's my not understanding. Why would the economic loss rule be triggered at all? It wasn't relied on by Judge Rosenthal, correct? Correct. Okay, so it assumes some contractual privity. You're saying that's with the downstream partner of the sub? Yes. Ah. And the economic loss rule was not, you're correct, was not relied on by Judge Rosenthal. We offer it as an alternative ground for affirmance. And while Plaintiff does... PIDATA does challenge that we didn't file a notice of cross-appeal, this Court's repeatedly directed appellees not to file a notice of cross-appeal when just offering an alternative grounds for affirmance. We're not trying to seek to expand the scope of the Court's relief or change the scope of the Court's relief. We're still seeking dismissal. I get nervous when I'm asked to affirm a district court on a ground they didn't address, especially a judge like Judge Rosenthal. So really, in sort of Basics 101, the economic loss rule does apply even though you're strongly disputing there was ever a contractual relationship with PIDATA. Sure, yes. And the economic loss rule applies because we have this contractual arrangement. We're under a commercial contractual arrangement. It's a vertical contractual arrangement that the Court... And again, this goes to that case where the Court says there that in vertical contracting arrangements, it is beyond argument that one participant on a construction project cannot recover from another for economic loss caused by negligence. And in that case, they dealt with the question of whether the architect could be held liable by subs of the general contractor for where the subs had relied on certain plans and specifications provided by the architect, even though they were not in privity. So it really directly addresses that question because it finds that there's this whole vertical contract... I'm sure the record has got the cite that you've made. Maybe your opposing counsel is ready to speak to it. But when you were speaking to Judge Rosenthal, you described K Computer as a partner way downstream of the subsidiary. Yes. Okay, so you're saying there is a contractual dispute between PIDATA and your sub, and therefore the economic loss rule doesn't allow that to go forward, even as to you. Is that right? As they have alleged it, it's a vertical contracting arrangement where HPE Parent is apparently sitting at the top. And I'm accepting their allegations for purposes of this, where HPE Parent is sitting at the top as both, they say, called the ultimate beneficiary of the contract, and they also say that HPE Parent provided specifications for building this computer system for the Wi-Fi system for the Indian government. Below HPE Parent sits HPE India, which is a wholly owned subsidiary. Below HPE India sat a series of subcontractor partnering arrangements. PIDATA is down here. There's K Computers, then PIDATA, and then PIDATA has the contract with the Indian government. Okay. So it's kind of a series of downstream contracts. Are you recommending that as the primary basis to affirm, or is that secondary? It's a good one. I think it's an easy one. It addresses all of them. Judge Rosenthal chose not to use it, but I think it's one that this Court certainly can look to. That said, I don't think that her decision can be affirmed on each of the claims separately as well, for sure. We talked a little bit about the negligence claim and the importance of Exhibit A to that claim, but even in the absence of Exhibit A, on reconsideration, Judge Rosenthal considered the arguments that PIDATA is offering. Any of the documents that PIDATA offered to the Court on reconsideration, they were not newly discovered facts. They were all documents that were produced by PIDATA in litigation, and nor did PIDATA explain how any of them refuted what was in the Exhibit A, which is very clearly relied on in the complaint. And Judge Rosenthal said, I've considered all of this and I still find that there is no duty and that there is no breach for purposes of negligence. For purposes of the breach of fiduciary duty claim, that fails because there certainly is no fiduciary relationship, and I think that is what you were going to before. Remind me, I know in your brief you do respond to the In Re Banco case, a little less so Petrobas. Those do seem to be SDNY decisions saying an internal policy, if it says we're really robust on control, but it turns out there's rampant corruption. Those are actionable false statements. Why would those cases be different than here? We've got all sorts of protections. You heard him say, actually, they had none. I think, Your Honor, phrased them correctly there in the context of the federal securities fraud laws, which look to whether statements are materially false and misleading for purposes of investors, and they're evaluating them under the Private Securities Litigation Reform Act. So very different kind of standards involved there, and also the vast majority of the case law in that area goes the other way and follows the Ninth Circuit case that we addressed in our underlying retail wholesalers. But Judge Vance was not convinced by that. I mean, Judge Rosenthal was not convinced by that. No, she was not. And we tried on the first motion to dismiss and did not on the second, right? And I think, though, that one of the reasons why she said she was not convinced was because in that case, the case involved a question of whether HP had investigated. In that case, it was the conduct of the ex-CEO, Mark Curd, and the court said, well, in that case, they did investigate. Well, the second time around, we were able to show Judge Rosenthal they did investigate here. We just didn't know that that was what PIDATA was claiming and that that's what you were concerned about. So we were able to very clearly show that on the face of Exhibit A, that there was an investigation. They might disagree with the extent of it, but an internal investigation is subject to HP's, and they say this in the policy that plaintiff claims forms the basis of their entire theory, that it's in HP's sole discretion. And all of these criticisms of the investigation were only raised on reconsideration and only raised on appeal. They were not raised in opposition to the court's decision to our motion to dismiss the first amended complaint. The only thing that was raised there was plaintiff's claim that, oh, this is not actually the document cited in the complaint. And in response to that, we provided two things. First, we provided an affidavit that explained that this is the email from HP's corporate compliance mailbox, which is copied throughout. And also, this is the email, the one email that you attached to your discovery request and identified as the source of the information in paragraphs 11 and 12 of the complaint. Plaintiffs have now walked away from that position that it's just not the document that they relied on in the amended complaint, going so far now in appeal to say, it's so clearly the document that we relied on that you should have raised it the first time around. So, in that way, any of these concerns that they're now raising, they did not bring up to the district court before. So in that way, they're certainly waived. But also, the concerns regarding this distinction between HPE and HP India, it's an after-the-fact distinction. It's an after-the-fact concern that was raised. When the gentleman from PIDATA sends the email, he sends it to Sam Satsangi, the head of HPE India. He directs it to Mr. Satsangi by name. He discusses their prior correspondence on the issue. He refers to HPE India and HPE interchangeably. In the two months of correspondence that follows, he never brings up any concern about HPE versus HPE India when they file the complaint. There's no distinction between HPE versus HP India. In fact, when saying who responded in the complaint, PIDATA says that it was HPE that responded. So this distinction, this concern about an inadequate investigation is something that was, I think, created after the district court's decision on the motion to dismiss. I'll touch briefly, too, on just touching on the fiduciary duty and negligent misrep claims. With respect to negligent misrep claims, I think Judge Higginson, you were directly on point that these are statements of expectations for future conduct which can't serve as the basis for a negligent misrep claim. PIDATA tries to avoid that by saying that, well, that's not the law where you can show that it was knowingly and recklessly made at the time. And that injects this element of scienter, of knowledge into a negligent misrep claim that does not exist. That's a fraud claim. They didn't allege a fraud claim if they had alleged a fraud claim. There would be a lot more hurdles for them to overcome that we would have briefed and moved to dismiss on. There is no element of knowledge here, so that's kind of a way to try to get around the pretty settled law in that area. And in our view, the court's decision on that should very clearly be affirmed as it should on the breach of fiduciary duty and the negligence claims as well. All right. Thank you. Thank you, Your Honor. Thank you, Your Honor. First of all, I did address the ThinkPen case in my brief at pages 39 and 42. The ThinkPen case is, again, it's a breach of fiduciary duty case. It's not a negligence case. The negligent duty has never been discussed in the second case. If nothing else, that negligence claim should go back on duty. There's no reason for this Court to examine whether or not a negligent duty exists. But the ThinkPen case stands for the proposition that breaches of fiduciary relationship is fact specific. And what HB cites that case for is the notion that it is a it's not a duty to be taken lightly. It's not a duty that we find lightly. But it is a duty that can be found if the facts of the case are deemed necessary. So the facts of ThinkPen are not necessarily relevant to whether or not a fiduciary duty exists in our case. And in our case, what we have here is a situation where my client has a concern about doing business with an HP partner in a jurisdiction that has some admitted concerns with corruption. So they have conversations and communications, and they have this code of conduct that they rely on. It's not just kind of an abstract code of conduct. They are making representations to the government of India, to a specific state in India, regarding its needs and supplies. And HP is going to back those representations. So they rely on proper billing. They rely on proper certain ethical standards. And they are relying on that in order to enter into that relationship. The reason this is not a payment dispute is because in the underlying Indian litigation, PyData paid K computers every dollar that it asked for. There was an underlying lawsuit. K computers claimed an amount of money. PyData disagreed with that claim, but paid every single dollar anyway. And K computers refused to dismiss that case, at which point we went to HP and said, hey, you need to do something to help us here, because your partner is not acting in an appropriate manner. I will say two other things. One, the statement in the complaint that corrective action has been taken refers to an entirely different email than the one that is cited in the petition. And that speaks to my issue with relying on this one email. There are other emails and communications. There are documents, there are emails between the HP compliance office where they acknowledge responsibility for the complaint, and where they say corrective action has been taken. That's not part of the chain that the district court relied on. And that's why either a Article 56 motion or the assumption that our statements are true has to be in effect. And last, I'll cite the L.A.N. case that Ms. McNally cited. I've seen that case in other contexts. L.A.N. is a construction case. And what L.A.N. stands for is the proposition that a general contractor can't sue all of the subs in the chain. Or a homeowner. A homeowner has a contract with a general contractor. Homeowner can't then go and sue every single sub who does any part of any work on the case, on the house. The idea is that would explode litigation if that were the case. This is not that situation. This is not a situation where you have a prime contractor and a sub and multiple subs. What this is, is this is a situation and we're not suing based on the contract between K  We're not suing based on high data. We're suing on an entirely separate set of documents. And the law is very clear, cited to the Charlene case in my brief, that the economic loss rule does not preclude any economic damages from being asserted in a negligence or a tort-based claim. There are negligence, negligent misrepresentation, fraudulent misrepresentation are carved out of the case by the district court so it's not an issue that this court needs to address. And the L.A.N. case has literally no applicability to this situation because it's construction specific. There is a litigants have a right to rely on established rules of procedure. And in this case, we have a right to rely on the district court saying that breach and damages would be carried forward to summary judgment or trial. And that's all we're asking for. We're just asking to be allowed to conduct our discovery and move forward with the case in accordance with generally accepted legal principles regarding the resolution of motion citizens. Alright, thank you. Your case is under submission. The court will take a brief recess before